UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Crown Equipment Corporation,                                    Case No. 3:17-cv-1711

        Plaintiff,

        v.                                                              MEMORANDUM OPINION
                                                                   AND ORDER

KeHE Distributors, LLC,

        Defendant.

## I.    INTRODUCTION

Plaintiff Crown Equipment Corporation alleges Defendant KeHE Distributors, LLC breached a contract to pay $135,322.24 for a forklift. (Doc. No. 1). Crown filed a motion for summary judgment on its breach of contract claim. (Doc. No. 19). KeHE filed a motion opposing summary judgment and seeking oral argument. (Doc. No. 22). For the reasons discussed below, I grant in part and deny in part Crown's motion for summary judgment.

## II.    BACKGROUND

Crown is a lift truck manufacturer. KeHE is a distributor of natural foods. The parties previously conducted business together and are involved in separate litigation concerning a forklift accident that occurred in Illinois in 2014. The present litigation concerns the sale of a forklift that KeHE acquired from Crown as a replacement for the one damaged in 2014.

On August 7, 2015, one of Crown's Account Managers, Patrick Durand, sent KeHE a package of documents that included: a letter from Durand; a one-page flyer with information about the model of the forklift KeHE would be buying, the TSP-7000; a page showing the features this

particular forklift would have, including performance specifications; a page labeled as the "purchase plan," which KeHE would later sign and return to Crown and which contained a purchase price of $135,322.24; a warranty page; and a page containing other terms and conditions that would govern the transaction, including the requirement that payment be "net 10 days date of shipment unless otherwise agreed to in writing." (Doc. No. 19-1 at 8-12). Two days later, KeHE sent back a signed copy of the purchase plan sheet. (Doc. No.19-2).

Crown manufactured a forklift in accordance with the specifications laid out in its August 7th communication and delivered the forklift in December 2015. KeHE accepted delivery and began using the machine, but it denies having any obligation to make payments for it. KeHE claims that the price of the machine was never agreed to and that the parties intended for the price to be dependent on the outcome of the litigation over the 2014 incident. After not receiving any payment for the machine, Crown brought this breach of contract action. Crown has moved for summary judgment on its claim seeking recovery for the purchase price as well as service charges accrued as a result of nonpayment.

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing summary judgment "may not rest

upon the mere allegations or denials of his pleading and instead must set forth specific facts showing there is a genuine issue for trial. *Id.* at 256.

## IV. DISCUSSION

To prevail on its breach of contract claim under Ohio law, Crown must establish: (1) a contract existed between the parties; (2) KeHE failed to perform its obligations under the contract; and (3) damages resulted from the breach. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St. 3d 453 (2018).

### A. CONTRACT FORMATION

To demonstrate that a contract exists, the plaintiff must show offer, acceptance, and consideration. *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 572 (6th Cir. 1999). A binding contract comes into existence when an offer is accepted. *Id.* at 571.

#### 1. August 7, 2015

The first issue is whether Crown's August 7 communication qualifies as an offer. While a price quotation is usually considered an invitation for an offer, it may qualify as an offer if it is sufficiently detailed so that it "reasonably appear[s] from the price quotation that assent to the quotation is all that is needed to ripen the offer into a contract." *Dyno Const. Co.*, 198 F.3d at 572. "While the inclusion of a description of the product, price, quantity, and terms of payment may indicate that the price quotation is an offer. . . the determination of the issue depends primarily upon the intention of the person communicating the quotation, as demonstrated by all of the surrounding facts and circumstances." *Id.* To qualify as an offer, a price quotation must evidence the "express or implied intent of the offeror that its acceptance shall constitute a binding contract." *Id.* (quoting *Maurice Elec. Supply*, 632 F. Supp. 1082, 1087) (D.D.C. 1986)).

Although this question of intent is ordinarily a question of fact, under appropriate circumstances a court may decide the issue as a matter of law. *Id.* (quoting *Day v. Amax. Inc.*, 701

F.2d 1258 (8th Cir. 1983) (affirming the district court's grant of a directed verdict on whether the defendant's description of equipment and quotation of prices constituted an offer)). When making this determination, courts have looked to a range of factors for guidance, including "the extent of prior inquiry, the completeness of the terms of the suggested bargain, and the number of persons to whom the price quotation is communicated." *Hydrodec of N. Am. LLC v. Api Heat Transfer, Inc.*, Case No. 5:16-cv-2207, 2017 WL 3283997, at *5 (N.D. Ohio Aug. 2, 2017) (collecting cases).

In *Dyno Construction. Co.*, the Sixth Circuit affirmed the district court's holding that a price quotation for the sale of iron pipe and fittings was not an offer. The court of appeals looked at the language of the communications and explained that "neither [of the two communications at issue] contained words indicating that [the seller] intended to make an offer." *Dyno Constr. Co.*, 198 F.3d at 573. Instead, the word "Estimate" was printed at the top of the first communication, and "Please call" was printed on the cover sheet of the second. *Id.* at 574. Although the communications did contain descriptions of the materials, prices, and quantities involved, there was nothing about the place of delivery, timing of performance, or terms of payment. *Id.*

Similarly, in *Mecanique C.N.C., Inc. v. Durr Environmental*, the district court found that a quotation with a price and description of the work to be performed was not an offer in part because it lacked details like the terms of payment and timing of performance. 304 F. Supp. 2d 971 (S.D. Ohio 2004). The Court further explained that a letter accompanying the quotation, which closed "Hoping the above meets your entire satisfaction. . . ," indicated that the plaintiff intended for the quotation to lead to further negotiation, rather than serve as an offer to which the defendant could bind the plaintiff through acceptance. *Id.* at 979-80.

But, in *Hydrodec*, the district court found that a price quotation that was specific as to price, quantity, payment, and location for delivery was an offer under Ohio law. 2017 WL 3283997 at *5-6. In doing so, the court noted that the communication at issue "clearly identified the 'Terms of the

4

Sale' as [the] standard terms and conditions, a copy of which was attached to each quote." *Id.* at *5. The quotations also contained clarifying details related to the specific heat exchangers that were designed for the project. *Id.* at *6.

Turning to the present case, the question is whether Crown's price quotation demonstrates an intent to make an offer to which it could be bound. The following factors are relevant to the analysis: (1) the level of detail contained in the quotation itself, particularly with regard to price, payment terms, and timing of performance; (2) the extent of prior inquiry or negotiations between the parties; (3) the completeness of the quoted terms communicated; (4) the number of persons to whom the quotation was sent; and (5) any language accompanying the quotation that sheds light on that party's intent. *See, e.g.*, *Nordyne, Inc. v. Int'l Controls & Measurements Corp.*, 262 F.3d 843, 846 (8th Cir. 2001); *Stelluti Kerr, L.L.C. v. Mapel Corp.*, 703 Fed.Appx. 214, 224 (5th Cir. 2017); *Hydrodec*, 2017 WL 3283997, at *5.

Some of the facts before me support the conclusion that Crown's August 7 price quotation was an offer. The phrase "revised quote" in the email accompanying the quotation suggests that the communication was made to KeHE specifically and was the product of previous negotiations. (Doc. No. 23-1 at 2.) Further, the level of detail in the price quotation and accompanying documents is consistent with treating it as an offer. The quotation specified (1) a price; (2) a description of the specific forklift being offered for manufacture and sale; (3) information about the delivery method and timing; (4) payment terms; (5) warranty terms; and (6) the terms and conditions that govern the transaction. In many ways, Crown's communication is much like the price quotation found to be an offer in *Hydrodec*.

Despite all of this, the language found in the quotation itself and the email that accompanied it suggests that Crown did not intend it to be an offer. First, the quotation itself plainly states that it is "[s]ubject to acceptance by buyer and seller within 30 days from the date hereof" and that "[a]ll

5

orders are subject to acceptance by Crown." (Doc. No. 19-1 at 10). Viewing this language in the light most favorable to KeHE, a reasonable factfinder could conclude some additional approval was required from Crown before an agreement could be formed. Second, the email accompanying the quotation asks for a signature to "place the order" and also refers to a two-week period during which changes could be made. (Doc. No. 23-1). A reasonable factfinder could conclude that this invitation to place an order is best understood as an invitation to make an offer. That email also asks KeHE to set up a "follow up meeting next week" for a "final spec review." *Id.* This language further suggests that some other steps were needed before a final agreement was in place.

In sum, although there is considerable evidence that the August 7 price quotation was an offer, sufficient evidence exists to suggest that it is not, making summary judgment unwarranted.

### 2. August 9, 2015

Crown next points to the parties' "course of performance" as the basis for a contract. (Doc. No. 19 at 6 n. 2). I take this argument to be that even if KeHE signing and returning the price quotation did not create an offer, the parties' conduct was enough to establish a contract.[1] KeHE has not responded to this argument in its reply. The issue is again whether there was an offer and whether that offer was accepted.

A purchase order placed in response to a quotation will usually serve as an offer. *Babcock & Wilcox Co. v. Hitachi Am., Ltd.*, 406 F. Supp. 2d 819, 827 (N.D. Ohio 2005) (quoting *TLF Electronics, Inc. v. Newcome Corp.*, No. 01AP-821, 2002 WL 338203, *2 (Ohio Ct. App. 2002) (Generally, the submission of a purchase order may be deemed an offer to be accepted or rejected by the seller.). Ohio courts hold that an offer is a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude

---

[1] This is distinct from the way "course of performance" is used to interpret the meaning of an agreement that involves repeated occasions for performance. *See Course of Performance*, Black's Law Dictionary (11th ed. 2019).

it." *Leaseway Distribution Centers, Inc. v. Dep't of Admin. Services*, 550 N.E.2. 955, 957 (1988) (quoting Restatement (Second) of Contracts § 24). By sending back a signed copy of the Purchase Plan sheet, KeHE manifested a willingness to purchase the forklift at that price. This constitutes an offer that Crown could accept. This is true even if the offer is limited to the single page that was signed and returned. *See* Ohio Rev. Code § 1302.07(C) ("Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.").

The next issue is whether Crown accepted that offer. Under Ohio law, "unless otherwise unambiguously indicated by the language or circumstances: (1) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances. Ohio Rev. Code § 1302.09(A). Subsection (2) further explains: "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods . . . ." Ohio Rev. Code § 1302.09(A)(2). There is nothing in the record to indicate that the methods of acceptance for this offer were limited in any way.

Therefore, Crown was entitled to accept the offer through performance, which it did when it manufactured and delivered the forklift. In fact, this prompt shipment of conforming goods is one of the methods specifically contemplated by the statute. Crown following up with invoices for payment at almost exactly the price listed in the purchase plan (the one-cent increase in sales tax on the invoice makes no meaningful difference for the purpose of this analysis) serves as further evidence that Crown accepted the offer. (Doc. No. 19-1 at 14).

Thus, I find that KeHE sending the signed purchase order to Crown on August 9 qualifies as an offer which Crown accepted by performance. I conclude KeHE and Crown entered into a

7

binding contract for the purchase of a forklift and KeHE breached that agreement when it failed to pay Crown's invoices for the forklift.

**B.     DAMAGES**

Because I have concluded that KeHE breached the contract, the next issue is damages. Crown seeks damages in three forms: (1) the purchase price under the contract; (2) service charges for non-payment; and (3) pre-judgment interest. (Doc. No. 19). KeHE has not addressed Crown's claims for the service charges or pre-judgment interest.

**1.     Purchase Price**

Crown first seeks to recover $135,322.24 for the purchase price owed under the contract. Under Ohio law, when a buyer fails to pay the price as it becomes due, the seller may recover the price of goods accepted under the contract. Ohio Rev. Code § 1302.83(A)(1).

KeHE first argues that the contract is ambiguous with regard to price. (Doc. No. 22 at 9.) When interpreting the terms of a contract, the role of the court is to give effect to the intent of the parties to the agreement. *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003) (citations omitted). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Id.* When ambiguity does exist, a court can consider extrinsic evidence to ascertain the parties' intent, but the court may not alter a contract by imputing an intent contrary to that expressed by the parties. *Id.*

KeHE argues that the phrase "[p]ayment shall be net 10 days date of shipment unless otherwise agreed to in writing," which appears in section 6 of the Terms and Conditions of Sale page attached to the quotation, makes the purchase price ambiguous. But that phrase is perfectly clear—it requires payment to be made within 10 days of shipment unless some other part of the agreement says otherwise. Moreover, the clause does not regulate the amount due under the

8

agreement. It governs when, not what, is due under the contract. I find that the purchase price is subject to only one interpretation, the number listed on the signed copy of the purchase plan: $135,322.24.

KeHE next contends that even though there is a price listed in the contract, the parties never agreed to a number because they instead agreed to make the price dependent on the outcome of the litigation over the 2014 incident. This kind of extrinsic evidence is not permitted to alter the intent clearly expressed by the price listed on the signed purchase plan. Additionally, KeHE has not provided any support for this claim other than a general denial that there was an agreement on price. KeHE points to communications between counsel that post-date the filing of the present lawsuit. Even if those communications were admissible, an issue I do not need to address today, they would not be probative of what the parties intended at the time they entered into the contract at issue. The only other support for KeHE's claim is their reference to the circumstances surrounding the sale but that is similarly unconvincing. The fact that KeHE acquired this forklift as a replacement for a previous one does not mean this forklift's price is at all related to a prior transaction.

Because I find the agreement is unambiguous as to the purchase price, I conclude Crown has established it is entitled to contract damages in the amount of $135,322.24.

### 2. Monthly Service Charge

The next question is whether Crown is entitled to recover the "monthly service charges" that it seeks under the contract. (Doc. No. 19 at 8). These charges are a one and one-half percent monthly fee that is added to all past due invoices.[2] There are two issues preventing me from awarding the monthly service charges at this time.

---

[2] Crown also seeks pre-judgment interest, which is addressed in greater detail in section three. I note Crown can recover either the monthly service charge or the pre-judgment interest, but not both. Despite the label attached to them, the monthly service charges that Crown seeks are interest charges and § 1343.04 provides for pre-judgment interest at a statutory rate "unless a written contract provides a different rate of interest." Ohio Rev. Code § 1343.03(A).

9

The first is whether these charges are part of the parties' agreement. Crown claims that they are because the "Terms and Conditions of Sale" page refers to "additional costs and charges," (Doc. No. 19 at 12), but it's not clear that language would necessarily include any and all additional costs that Crown might impose, much less a one and one-half percent monthly charge on overdue balances. Instead, here the terms of the contract are ambiguous. For example, a reasonable factfinder could conclude the phrase "additional costs and services" applies only to a limited category of unexpected additional costs and interest fees would have to be more explicit.

Second, Crown has not established that it is entitled to these damages under Ohio's adoption of the Uniform Commercial Code. While Crown refers to these charges as "incidental damages," (Doc. No.19 at 8), the service charge is instead more like an interest rate, which does not fit cleanly within the scope of damages that § 1302.84 provides for and is instead better analyzed under § 1343.03(A).

The incidental damages that § 1302.84 refers to are for expenses reasonably incurred by the seller "in connection with return or resale of the goods or otherwise resulting from the breach." R.C. § 1302.84. This provision is for situations where the seller incurs some additional costs because of the breach. For example: the seller can recoup storage charges when it was necessary to incur those charges to warehouse goods that were not accepted by the buyer. *See Dynaquest Corp. v. Chef'n Corp.*, No. 01AP-484 2002 WL 59017, at *4 (Ohio Ct. App. 10th Dist. Franklin County 2002). That kind of expense is different in kind from charging interest or a late fee for nonpayment. Additionally, even if these are characterized as "incidental damages" under § 1302.84, Crown would only be entitled to them if they are "commercially reasonable," which Crown has not established at this point in the litigation.

There are two barriers to my awarding Crown service charges at this point: Crown has not established that the service charges are part of the parties' agreement, and even if the "additional

costs and charges" clause is interpreted to cover service charges, Crown has not shown they are entitled to recover those charges as incidental damages under § 1302.84. Therefore, I deny Crown's motion for summary judgment with respect to the service charges.

### 3. Pre-judgment Interest

The final issue before the court is Crown's request for pre-judgment interest dating from the breach of contract on January 10, 2016. Section 1343.03(A) of the Ohio Revised Code governs pre-judgment interest for claims arising out of a breach of contract. Specifically, it provides that when money becomes due and payable on a judgment "arising out of a . . . contract or other transaction, the creditor is entitled to interest at that rate per annum determined pursuant to R.C. § 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to the rate provided in that contract." R.C. § 1343.03(A). Because I have found Crown is not entitled to summary judgment on the monthly service charge, I analyze its claim for pre-judgment interest below.

Once liability for breach of contract has been established, the trial court does not have discretion in deciding whether to award pre-judgment interest. *Keller & Kehoe, L.L.P. v. Smart Media of Delaware, Inc.*, No. 103607, 2016-Ohio-5409, 2016 WL 4399563, at *7-8 (8th Dist. 2016). Instead, the court's discretion is limited to determining when money becomes due and payable. *Parkhill L.L.C. v. Econ. & Cmty. Dev. Inst., Inc.*, NO. 2019-L-021 2019 WL 4016275, at *4 (11th Dist. 2019) (citing *Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 342 (1998).

Section 5703.47 of the Ohio Revised Code provides for interest at a rate determined annually by the Ohio Tax Commissioner. R.C. § 5703.47. The Ohio Tax Commissioner determined that the applicable rate was 3% in 2016, 4% in 2017 and 2018, and 5% in 2019. *See Annual Certified Interest Rates*, Ohio Department of Taxation,

https://www.tax.ohio.gov/ohio_individual/individual/interest_rates.aspx (last visited Sept. 17, 2019).

Here, the parties formed a contract for the sale of a forklift for $135,322.24. This purchase price became payable on January 10, 2016.[3] Thus, the amount became payable and due in January 2016. Under the rates above, Crown is entitled to: $3948.74 for the period from January 10, 2016 to December 31, 2016; $5412.89 for 2017; $5412.89 for 2018; $4764.08 for the period from January 1, 2019 to September 15, 2019; and $18.54 per day accruing from September 16, 2019 onward. I therefore order pre-judgment interest of $19,538.60 plus $18.54 per day for the period from September 16, 2019 to the date of entry of judgment.

## V. CONCLUSION

I grant in part Crown's motion for summary judgment and order damages of $135,322.24 for the purchase price under the contract and pre-judgment interest of $19,538.60 plus $18.54 per day for the period from September 16, 2019 to the date of entry of judgment. I deny Crown's motion for summary judgment with respect to its claim for the monthly service charges.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge

---

[3] This reflects the date that Crown alleges the breach occurred based on the payment terms listed in the terms and conditions of sale page. While Crown has not established that those terms and conditions are part of the contract found here, that date would, if anything, be even earlier under Section 1302.23(A)'s gap filling rule that payment is due at the time and place the buyer receives the goods. R.C. § 1302.23(A).